# EMINENT DOMAIN—RAILROADS—STREETS—STREET RAILROADS.

[Logan (3rd) Circuit Court, October Term, 1903.]

Day, Mooney and Norris, JJ.

CLEVELAND, C. C. & ST. L. RY. CO. v. URBANA, B. & N. RY. CO.

1. RAILROAD RIGHT OF WAY SUBJECT TO EMINENT DOMAIN, WHEN.

Land held by a railroad company, whether acquired by purchase or appropriation, which is not used or needed for the proper exercise of its corporate franchises, may be taken for and subjected to an additional public use, the same as the land of any other owner; but the former use cannot be wholly defeated. Hence, a municipality, under its general authority to establish streets, may extend a street across the right of way of a railroad company, provided such new use, under the circumstances of the particular case, is reasonably consistent with the former use.

2. STREET EXTENSION DOES NOT SUPERSEDE RAILROAD USE—DAMAGES.

Where a street is extended so as to take in land used for railroad purposes, the latter use is not thereby superseded; and, in so far as it is interfered with, the question is one simply of damages. But when land held by a railroad company is not used or needed for the purpose of its acquisition, its title therein becomes absolutely extinguished by such street extension.

3. INTERFERENCE OF RAILROAD USE BY STREET USE DEEMED TO HAVE BEEN COMPENSATED IN STREET PROCEEDING.

Any interference with a railroad company's use of land caused by the use of the same land for ordinary street purposes, (such land having been

taken in by a street extension), being simply a question of compensation, will be deemed to have been adjusted in the street extension proceeding in which the consistency of the two uses was determined.

**4. COMPENSATION IN APPROPRIATION PROCEEDING DOES NOT COVER NEW USE.**

Compensation paid by a municipality to a railroad company, in a street extension proceeding, on account of interference with the company's use of land by reason of subjecting the land to ordinary street purposes, will be held to include all uses of such land for street purposes; but will not cover new servitudes upon the land.

**5. STREET RAILWAY ALONG STREET NOT A NEW USE.**

The construction and operation of a street railway along a street is an ordinary street use, and not a new servitude entitling an abutting owner, or the owner of the fee of land subject to a street easement, to additional compensation. Hence, a railroad company whose right of way has been crossed by a street established in a street extension proceeding, wherein compensation was paid to the company therefor, does not, thereafter, have such an ownership or title to the land so jointly used as will require a street railway company, as a condition precedent, to proceed by appropriation, or otherwise, to acquire from it the right to construct a proposed line of street railway along such street extension over and across its tracks and right of way.

**6. STREET CAR A VEHICLE.**

A street car propelled by electricity is a "vehicle" within the meaning of an admission by a railroad company, in an action to enjoin a street railway company from crossing its right of way along the street, that its title and ownership is subject to the right and use of vehicles passing along the street.

**7. ACTS 88 O. L. 173 AND 88 O. L. 389, ATTEMPTING TO AMEND SECS. 2502, 3437, 3439 REV. STAT. UNCONSTITUTIONAL.**

As grants of street railway franchises, and the establishment of routes by municipalities can be provided for by general laws, they are, therefore, subjects of a general nature, and, under Sec. 26, Art. 2 of the state constitution, all laws relating thereto must have uniform operation throughout the state. Hence, the amendatory act of April 12, 1883 (80 O. L. 173), purporting to amend Secs. 3437 and 3439 Rev. Stat., relating to street railways, which excepts from its operation Montgomery county, is unconstitutional; and as a partial repeal of said sections would indirectly accomplish the very purpose which the constitution designated absolutely to prevent, the repealing clause of said attempted amendatory act is also unconstitutional, thereby leaving original Secs. 3437 and 3439 Rev. Stat. unamended and still in force. The subsequent amendment (88 O. L. 389) of Sec. 2502 Rev. Stat. (repealed 96 O. L. 96), is also invalid for the same reasons.

**8. QUESTION OF NOTICE UNDER SEC. 2502 REV. STAT. MAY BE RAISED BY STEAM RAILROAD COMPANY, WHEN.**

A steam railroad company which will suffer some inconvenience from the construction and operation of a street railway company along a street, and over its right of way, is a proper party to, and may, in an action commenced by it to enjoin such use, raise the question whether the notice provided by Sec. 2502 Rev. Stat. (repealed 96 O. L. 96), is a condition precedent to a municipal grant to the street railway company.

**9. SECTIONS 2501 TO 2505 AND 3437 REV. STAT. ET SEQ. CONSTRUED.**

Sections 2501 to 2505 Rev. Stat. standing alone relate to street railway lines located and extended wholly within municipalities; Sec. 2505 Rev. Stat. relates expressly and exclusively to extensions within a municipality of original city lines; and Sec. 3437 Rev. Stat. et seq. relate to all lines and extensions, wherever located. In case of conflict as to municipal lines or

extensions, the more general provisions of Sec. 3437 Rev. Stat. *et seq.* must yield to the more specific provisions of Sec. 2501 Rev. Stat. *et seq.*, and the fact that Sec. 2505 Rev. Stat. was placed after Secs. 2501 to 2505 Rev. Stat., by the codification of 1880, does not alter its construction or meaning. (Section 2501 is now Sec. 1536-184 Rev. Stat.; Sec. 2502 was repealed. 96 O. L. 96; Secs. 2503 to 2505 are now Secs. 1536-186 to 1536-188 Rev. Stat.)

**10.** NOTICE REQUIRED BY SEC. 2502 REV. STAT. REQUIRED, WHEN.

An extension of an interurban electric railway line, lying wholly without a municipality, into or through the municipality is, under Sec. 3437 Rev. Stat. *et seq.*, an original or new line; and the notice provided by Sec. 2502 Rev. Stat. (repealed 96 O. L. 96), required to be given by Sec. 3739 Rev. Stat., as a condition precedent to the granting to such company of a franchise to construct such extension within the municipality and along its streets, must be given. But when the franchise is only for the extension of a line already existing and constructed within the municipality, under a former municipal franchise duly granted, such notice is not required.

**11.** INTERURBAN RAILWAYS MAY CONSTRUCT EXTENSIONS AND BRANCHES.

Interurban electric railways, having been classed as street railways by the statutes of Ohio, are governed by the laws relating to such railways; and, after securing the right to do so from the proper local authorities as required by law, may construct extensions and branches from its main line.

**12.** STREET RAILWAY MAY CROSS STEAM RAILROAD TRACKS AT GRADE.

The general rule that in the absence of statutes regulating grade crossings, equity may enjoin such crossings when the rights of the public, or one or the other of the intersecting lines will be materially injured by its existence does not apply to a street and steam railroad crossing; and as such rule does not apply to streets in general, it cannot therefore have any application when the streets are being subjected to an ordinary street use. Hence, as the construction and operation of a street railway upon streets is a proper street use, such company will not be enjoined from crossing the steam railroad company's tracks at grade, in the absence of statutory prohibition.

**13.** DECISION OF COUNCIL IN GRANTING FRANCHISE IN STREETS NOT SUBJECT OF REVIEW, WHEN.

The decision of the municipal council in granting to a street railway company a franchise in a street which crosses a steam railroad track at grade, is not the subject of judicial revision, when it does not appear that the council exceeded its power, or that its decision was induced by fraud. Nor will the fact that another street could be used, upon which a safer and better crossing could be constructed, authorize a review; a *fortiori* when the street railway company has no present right to use such street, and it cannot be assumed that such right could ever be acquired.

APPEAL from Logan common pleas court.

Plaintiff is a steam railroad company and owns and operates two lines of railway both of which pass through the city of Bellefontaine and cross Columbus avenue, a street of said city, at grade. These crossings of said street and railroad lines are in the immediate vicinity of the passenger and freight stations, the railway yards, the roundhouse and the extensive machine and repair shops of plaintiff. Beside the necessary use of these railway tracks across said street in shifting cars and making

Railway Co. v. Railway Co.

up trains, more than twenty-five regular trains of plaintiff pass over said crossing every twenty-four hours. Some of these trains transport United States mails and others of them are engaged in the business of interstate commerce. The roadway of Columbus avenue, as it approaches these lines of railroad, descends at quite a rate from a higher elevation or grade to the level of said railroad tracks and somewhat abruptly ascends at, and from the other side thereof. The private grounds abutting upon, and adjacent to said avenue and railroad at these crossings, are several feet higher than the surface of either the avenue or the railroad tracks and are built upon. By reason of such condition the view of the street from a train on plaintiff's railroad approaching said crossing and the view of the railroad track from a vehicle approaching the same, is obstructed until a point is reached within a short distance of the point of crossing. Sandusky avenue is a public street of said city running parallel with Columbus avenue, about 450 feet distant therefrom, and crossing plaintiff's said tracks by means of bridges or overhead crossing.

Plaintiff or its predecessor in title was the owner in fee of the land now included between the lines of Columbus avenue and near its said track and upon which its tracks are now located, prior to the establishment of Columbus avenue as a public street, and plaintiff now claims to be such owner " subject only to the right of persons, animals and vehicles to pass along said avenue and over said tracks."

Plaintiff and its predecessor in title have maintained said railroad tracks in their present location for more than fifty years prior to May 6, 1903, when this action was commenced.

Defendant is an Ohio corporation and its charter purports to authorize it to build, maintain and operate a street railway with single or double tracks and all necessary and convenient branches and all other appurtenances using electricity as a motive power for the transportation of passengers, baggage, express matter, United States mail and freight, the *termini* being the cities of Urbana and Toledo, Ohio, and the road passing through this county and into or through certain other named counties of this state. By ordinance passed April 23, 1901, the provisions of Secs. 2501 to 2504 Rev. Stat., inclusive, being strictly observed, the city council of this city granted authority to defendant to construct and operate a line of street railway upon and along Main street in this city. This ordinance has since remained unrepealed, and defendant has claimed under it, at all times since its passage, and has since constructed and is now operating said Main street line in accordance with the terms of said ordinance. Said Main street crosses Columbus avenue at right angles and extends north and south in the general direction of a line from Urbana to Toledo.

October 21, 1902, the requisite " consents " of property owners first having been obtained, but without any notice as provided by Sec. 2502 Rev. Stat., having been given, the city council of this city passed an ordinance and thereby in form granted to defendant the right to construct. a line of street railway connecting with and branching from said Main street line at the intersection of Main street and Columbus avenue and extending thence on and along Columbus avenue to the west line of said city. This Columbus avenue line, if constructed in accordance with the terms and conditions of said ordinance, will cross plaintiff's railroad tracks at grade, and in the construction of the crossing, it will be necessary to remove a section of plaintiff's tracks and substitute therefor devices known as frog connections and crossings. These devices will not constitute as perfect a track for plaintiff's railroad as the continuous rail now in use. Defendant intends, unless enjoined, to construct said Columbus avenue line in accordance with the terms of said ordinance, but intends to use frog connections and crossings of the " most approved patterns and materials." Defendant has never acquired the right to pass along said avenue and across said tracks by condemnation or contract with plaintiff.

To construct its principal line from the *termini* of its Main street line is deemed by defendant, and for just and sufficient reasons, to be impracticable, and defendant has no franchise to construct any line of street railway on any other street or streets of said city except upon Main street and Columbus avenue, and only upon these as heretofore stated. Upon these facts, some of which are admitted by the pleadings, some established by evidence at the trial, and some admitted by demurrer to a certain cause of action, plaintiff seeks an injunction against the construction of said grade crossing. The following distinct grounds are urged by plaintiff: First, plaintiff owns the land sought to be taken by defendant and the right so to take has not been acquired by defendant; second, the statutes under which the city council passed the ordinance of October 21, 1902, are unconstitutional and void; third, if said statutes are valid, the ordinance is nevertheless void because no notice was given as required by Sec. 2502 Rev. Stat.; fourth, defendant has by law no power to construct branches, notwithstanding the terms of its charter; and fifth, the proposed crossings are so dangerous to plaintiff's property and to the travelling public and the proposed use will so impede the movement of plaintiff's trains and so interfere with plaintiff's transaction of interstate commerce and transporation of United States mails, that a court of equity should interfere by injunction for these reasons alone.

**West & West** and **L. J. Hackney,** for plaintiff.

**A. J. Miller** and **Pomerene & Pomerene**, for defendant:

A county road taken into a municipal corporation by the annexation of contiguous territory, becomes subject to the control of the municipal authorities. Wabash Ry. Co. v. Defiance, 52 Ohio St. 262 [40 N. E. Rep. 89] ; Lawrence Ry. Co. v. Mahoning Co. (Comrs.) 35 Ohio St. 1; Cincinnati & H. Elec. St. Ry. Co. v. Railway Co. 12 Circ. Dec. 113 (21 R. 391) ; affirmed by the Supreme Court without report, January 22, 1901, Railway Co. v. Railway Co. 64 Ohio St. 550 [61 N. E. Rep. 1147] ; Cincinnati, L. & A. Elec. Ry. Co. v. Lohe, 68 Ohio St. 101; Sec. 2780-17 Rev. Stat.; Massillon Bridge Co. v. Iron Co. 59 Ohio St. 179 [52 N. E. Rep. 192] ; Joyce, Electric Law Secs. 407, 408; Elliott, Roads & Streets 698.

The defendant company has the right to cross the tracks of the steam road, without compensation, the same as a pedestrian or owner of a private vehicle. Cincinnati & H. Elec. St. Ry. Co. v. Railway Co. 12 Circ. Dec. 113 (21 R. 391) ; affirmed by the Supreme Court, Railway Co. v. Railway Co. 64 Ohio St. 550 [61 N. E. Rep. 1147].

Notice by publication under Sec. 2502 Rev. Stat., or bid for the receipt of fares, is not required where the franchise granted is an extension of the route of an existing franchise. Sections 3437, 3439 Rev. Stat., not applicable; State v. Railway Co. 10 Circ. Dec. 418 (19 R. 79).

Sections 2501 to 2505 Rev. Stat. relate to railways within corporate limits; Secs. 3437 to 3443 Rev. Stat. relate to railways both within and without corporate limits; Secs. 2501 and 2502 Rev. Stat. relate to original routes and not extensions, while Sec. 2505 Rev. Stat. relates to extensions, and is subject to the provisions of Secs. 3437 to 3443 Rev. Stat.

The publication of notice, or the consent of the property owners is not a constitutional requirement, but only one of legislative policy. Hamilton, G. & C. Trac. Co. v. Parish, 67 Ohio St. 181 [65 N. E. Rep. 1011] ; Near v. Railway Co. 4 Dec. 475 (29 Bull. 171).

Statute part unconstitutional and part constitutional will be sustained in part. Exchange Bank v. Hines, 3 Ohio St. 1; Treasurer v. Bank, 47 Ohio St. 503 [25 N. E. Rep. 697] ; State v. Baker, 55 Ohio St. 1 [44 N. E. Rep. 516] ; State v. Brewster, 39 Ohio St. 653; State v. Harvey, 4 Circ. Dec. 227 (8 R. 599) ; Keokuk Northern Line Packet Co. v. Keokuk (City), 95 U. S. 80 [24 L. Ed. 377] ; Vial v. Penniman, 103 U. S. 459 [26 L. Ed. 602] ; Town of Unity v. Burrage, 103 U. S. 447 [26 L. Ed. 405] ; Reagan v. Loan & Trust Co. 154 U. S. 362 [14 Sup. Ct. Rep. 1047; 38 L. Ed. 1014] ; Field v. Clark, 143 U. S. 649 [12 Sup. Ct. Rep. 495; 36 L. Ed. 295] ; Sturges v. Crowninshield, 17 U. S. (4 Wheat.) 122 [4 L. Ed. 529].

Statutes must be interpreted, if possible, so as to make it consistent with the constitution and paramount law. Presser v. People, 116 U. S. 252 [6 Sup. Ct. Rep. 580; 29 L. Ed. 615]; Parsons v. Bedford, 28 U. S. (3 Pet.) 433 [7 L. Ed. 732].

Presumption always in favor of constitutionality. Endlich, Constr. of Stat. Secs. 178, 179 and 538; 6 Am. & Eng. Enc. Law (2 ed.) 1088; Cooley, Const. Lim. (6 ed.) 211.

Deference to usage and especially where harm results from disturbance. Endlich, Constr. of Stat. Sec. 527.

A court of equity has no jurisdiction to determine whether proposed grade crossing is a public menace; this question is vested exclusively in the city council. Section 2640 Rev. Stat.; Wabash Ry. Co. v. Defiance, 52 Ohio St. 262 [40 N. E. Rep. 89]; affirmed, Wabash Ry. Co. v. Defiance, 10 O. F. D. 480 [167 U. S. 88; 17 Sup. Ct. Rep. 748; 42 L. Ed. 87].

Not within the jurisdiction of any court, in the absence of fraud in the council, to review its decision. Sims v. Railway Co. 37 Ohio St. 556; Cincinnati v. Railway Co. 1 Dec. 591 (31 Bull. 308).

**MOONEY, J.**

It will be convenient to consider the asserted grounds for an injunction in this case in the order heretofore stated.

I. " More than fifty years " before the commencement of this action, general power was conferred upon cities and villages to lay off and establish streets. 50 O. L. 223. This power has ever since existed. Land held by a railroad corporation, whether acquired by it by purchase or appropriation, which is not employed in nor needed for the proper exercise of its corporate franchises, can be taken for a public use, the same as the lands of any other owner. Railway Co. v. Belle Centre (Vil.), 48 Ohio St. 273 [27 N. E. Rep. 464].

Under the general authority to establish streets, a city or village may establish streets across lands which are subject to the franchise of a railroad corporation, provided the second use for which the land is so taken is, in the circumstances of the particular case, reasonably consistent with the former use. The land may, in such case, be subjected to the additional use, but the former use may not thereby be wholly defeated. Little Miami Ry. Co. v. Dayton, 23 Ohio St. 510.

" By the extension of the street, the land is subjected to an additional use, but the former use is not superseded; and, in so far as it is interfered with, the question becomes one simply of compensation." Little Miami Ry. Co. v. Dayton, *supra,* p. 519.

Columbus avenue has been established as a public street across lands owned by plaintiff, some of which land then was and some was not used

or needed for railroad purposes. Plaintiff's title in the land not so used or needed was absolutely extinguished by establishing the street. In the proceeding to establish the street, the consistency of the use of the lands occupied and used by the tracks for both railroad and ordinary street purposes was determined, and any interference with the railroad company's use of the land for railroad purposes, by reason of the use of the land for ordinary street purposes being "simply a question of compensation" must be deemed to have been adjusted in that proceeding. This compensation, while including all use of the land for street purposes, would not cover new servitudes upon the land taken. The construction of a line of street railway along a street is an ordinary street use and is not a new servitude entitling the owner of abutting property, or of the fee of the street subject to the street easement, to further compensation.

"So far as the carrying of passengers by this mode is concerned, it differs in nothing from the exercise of the common right of carrying them by coaches and omnibuses; and everything needing a grant, or the further authority of law, is the right to place and maintain in the highway, the necessary conveniences for this new description of carriages." Cincinnati & S. G. Ave St. Ry. Co. v. Cumminsville, 14 Ohio St. 523, 545.

Moreover, plaintiff expressly states in its petition that its asserted title and ownership is subject to the "right and use of persons, animals and *vehicles* traveling upon or passing along the said avenue as a public street and highway." A street car, propelled by electricity is, within this admission, a vehicle. Cincinnati St. Ry. Co. v. Snell, 54 Ohio St. 197 [43 N. E. Rep. 207; 32 L. R. A. 276]. See generally as a full and correct statement of the law of this branch of the case, Cincinnati & H. Elec. St. Ry. Co. v. Railway Co. 12 Circ. Dec. 113 (21 R. 391); affirmed, no report, Railway Co. v. Railway Co. 64 Ohio St. 550 [61 N. E. Rep. 1147]. Plaintiff, then, has no such ownership of, or title to, the lands in question as requires defendant to proceed by appropriation, or otherwise acquire the right from plaintiff as a condition precedent to the construction of the proposed line of street railway.

II. The ordinance of October 21, 1902, depends for its validity upon Sec. 2505 Rev. Stat. This section refers to Secs. 3437 to 3443, Rev. Stat., inclusive, and requires proceedings thereunder. Sections 3438 and 3439 Rev. Stat. were last amended and in the present form enacted April 18, 1883 (80 O. L. 173). It is asserted by plaintiff that the act is unconstitutionl and void, and the ordinance in question is therefore invalid. By Sec. 26, Art. 2, of the constitution "all laws of a general nature are required to have a uniform operation throughout the state."

" Whenever a law of·a general nature having·a uniform operation throughout the state, can be made fully to cover and provide for any given subject matter, the legislation, as to such subject matter, must be by general laws, and local or special· laws cannot be constitutionally enacted as to such subject matter." State v. Spellmire, 67 Ohio· St. 77 [65 N. E. Rep. 619].

The grant of street railway franchises by municipalities or other public agencies, and the establishment of street railway routes by them, can be covered and provided for by general laws. The possibility is demonstrated by the fact that it has been done. It is provided in the act of April 18, 1883, " that this act shall not apply to any county con-- taining a city of the. second grade of the second class." This proviso excepts Montgomery county from the operation of the amended sections. If the proviso is to be taken as an integral part of the act, there can be, we think, no doubt that this enactment of a general nature is not valid law, because it does not have uniform operation throughout the state. Now the proviso equally with the other terms of the act is expressive of the legislative will. On the one hand the legislature wills and declares that the existing statutes shall be altered and amended so far as eighty-seven counties of the state are concerned, and on the other hand it wills and declares that the existing statutes shall remain in force unaltered and unamended so far as Montgomery county is concerned. The act voted upon was intended no less to accomplish one purpose than the other, and both purposes were intended to be carried into effect by the act. The constitution prevents not only the accomplishment of the one purpose, but also of the other and of both together.

In State v. Buckley, 60 Ohio St. 273, it was held:

"1. ·When an act of the general assembly, required to have uniform operation throughout the state, expressly excepts from its operation one or more cities or counties, such act by reason of such exception is unconstitutional· and void.

" 2. · Such an exception cannot be held invalid and thereby extend the act over the excepted territory, because in such case the general assembly never enacted the statute in such territory, and the court has no power to enact it therein."

·What is true of Sec. 1 of the act referred to is equally true of Sec. 2 thereof—the repealing section. The legislature never declared its intention to repeal said·sections as to the whole state, but only as to certain counties ('less than all), leaving the former statutes in force in one county.

To permit such partial repeal would indirectly accomplish the very purpose which the constitutional provisions ·were designated absolutely

to prevent. The repealing section is therefore void, also. The general rule that "where a repeal of prior laws is inserted in an act in order to secure the unobstructed operation of such act and it is held unconstitutional, the incidental provision of prior laws will fall with it," also sustains the invalidity of the repealing section. State v. Heffner, 59 Ohio St. 368 [52 N. E. Rep. 785]; State v. Buckley, 60 Ohio St. 273 [54 N. E. Rep. 272]; State v. Hall, 67 Ohio St. 303 [65 N. E. Rep. 1019].

The act of April 18, 1883 (80 O. L. 173), is void, and because of its invalidity Secs. 3438 and 3439, as they appear in the Revised Statutes of 1880, are unamended and are still in force. Section 2502 Rev. Stat., as sought to be amended by said act, was subsequently amended to be free from any constitutional infirmity. The subsequent amendment of the section (88 O. L. 389) is invalid for reasons heretofore stated. This state of the law leads to the next ground for relief urged by plaintiff.

III. Was notice as provided by Sec. 2502 Rev. Stat. necessary as a condition precedent to the passage of the ordinance of October 21, 1902? No such notice was given, and since plaintiff will suffer some inconvenience from the *construction* as well as operation of the street railway, plaintiff is a proper party and in this action has the right to raise the question.

To answer the question will require a brief review of the street railway legislation of this state. Prior to March 3, 1860, all street railways in this state were constructed either by individuals or by corporations organized under special legislative charters passed before the present constitution was adopted, or by corporations organized under the general corporation act passed May 1, 1852. No express power or authority was conferred upon municipalities to grant the use of the streets to any such company or individual prior to March 3, 1860, and the right of such use and occupancy if derived from municipal authority, must have been granted under the general authority to control the streets. On the date last mentioned there was passed "An act relating to cities of the first class having a population exceeding 80,000 inhabitants." 57 O. L. 16. In Secs. 15 and 16 of this act, power to grant the use of the streets for street railway purposes and to prescribe by ordinance the terms and conditions of such occupancy is given with the requirement of "consents," notice of applications and bids, and it is prudently provided that "all reductions of the rates of fare shall inure to the benefit of the passengers carried."

April 10, 1861 (58 O. L. 66), an act entitled "An act to provide for and regulate street railroad companies" was passed. Section 5 of

this act requires the consent of the council or corporate authorities of the city, town or village wherein such railroad is to be constructed before such road is constructed or commenced, and said company may agree as to terms and conditions upon which the streets are used and the road operated. Cities of 80,000 population are excepted from the operation of the act. Section 7 provides that street railways may be located and constructed in part within, and in part without, the limits of any city, town or village, and any railroad constructed within the limits of any city, town or village, may be extended without the limits thereof. Provided, that before so extended, the company, or public officer or public authorities owning or having charge of any road, street, avenue, public way or grounds without such limits shall agree upon the terms and conditions upon which the same shall be occupied or used.

March 27, 1866 (63 O. L. 55), an act supplementary to the foregoing was passed by Sec. 6 of which Secs. 15 and 16 of the act of 1860 and Sec. 5 of the act of 1861 were expressly repealed. This act relates only to the construction of street railways within municipalities. Section 1 requires consent of the council. Section 2 requires the council to prescribe terms and conditions of use, public notice of intent to make the grant, and that no such grant shall be made except to the individual, company or corporation that will agree to carry at the lowest rates of fare. Section 3 requires the consents, in writing, of a majority of the owners of abutting lots, to be filed with the council and the council shall so declare, by resolution or ordinance, before the road is constructed, unless, by Sec. 4, by proper proceedings, the damages of the persons not consenting and waiving damages, are determined, and the rights of such persons acquired in and by appropriation proceedings. Section 5 regulates the procedure.

April 10, 1867 (64 O. L. 122), Sec. 7 of the act of April 10, 1861, was amended and the original section repealed. The extent of the amendment is not here material.

April 28, 1868 (65 O. L. 112), Sec. 3 of the act of March 27, 1866, was amended so as to require the filing of written consents by a majority in interest, as a condition to granting the franchise.

May 7, 1869 (66 O. L. 149), the municipal code was passed. Sections 411 to 414 of this code regulate street railroads. These sections, in order, provide that upon written application by a company, the council may grant permission to construct such railway and prescribe terms and conditions upon which, and the manner in which the same shall be operated; that no such ordinance shall be passed until notice of the application has been given, and no such grant shall be given except to

the company, etc., that will agree to carry at lowest rates of fare. The remaining sections relate to the grade of the streets and paving between the rails. Sections 1 and 2 of the act of March 27, 1866, were repealed by this code. On the same day that the municipal code was passed, and Secs. 1 and 2 of said act repealed, there was passed another act (66 O. L. 140) as follows:

"It shall be lawful for the council of any city or incorporated village to grant permission by ordinance to any person or company, owning or having the right to construct any street railroad, to extend their tracks, subject to the provisions of Secs. 4 and 5 of said act passed March 27, 1866, on any street or streets where the said council shall deem such extension beneficial to the public. And when any such extension shall be made, the charge for carrying passengers on any street railroad so extended, and its connections made with any other road or roads, by consolidation under existing laws, shall not be increased by reason of such extension or consolidation; said sum shall include the government tax."

February 19, 1870 (67 O. L. 10), the act of April 10, 1867, amending Sec. 7 of the act of April 10, 1861, was amended in part as follows:

"Street or horse railroads may be located and constructed, part within, part without, or wholly without the limits of any city, town or village; and any such road heretofore or hereafter constructed within, or part within, or wholly without the limits of any city, town or village, * * * may be so constructed or extended along or upon the national road, or any other road, street, avenue, turnpike, public way or ground, in accordance with the provisions of an act entitled 'an act to provide for and regulate street railroad companies,' passed April 10, 1861; provided, that, before such construction or extension, the company, public officer or public authorities, owning or having charge of any such road, * * * shall agree with such railroad company upon the manner, terms and conditions upon which the same shall be occupied or used," and in case the national road is used the board of public works of the state shall so agree. In this state of the law the Revised Statutes were passed as a single act. Sections 411, 412, 413 and 414 of the municipal code with some amendments became Secs. 2501, 2502, 2503 and 2504 Rev. Stat.

The act, 65 O. L. 112, was amended to read as follows:

"No such grant shall be made until there is produced to council, or the commissioners, as the case may be, the written consents of the owners of more than one-half of the feet front of the lots and lands abutting on the street or public way along which it is proposed to construct such railway or extension thereof; and the provision of Secs.

2501 and 2503 to 2505 Rev. Stat., inclusive, so far as they are applicable, shall be observed in all respects, whether the railway proposed is an extension of an old or the granting of a new route." This amendment became Sec. 3439 Rev. Stat.

March 9, 1880, Sec. 2505 Rev. Stat. was amended so as to make the extension therein provided for, subject to Secs. 3437 to 3443 Rev. Stat., inclusive, instead of subject to Secs. 4 and 5 of the act of March 27, 1866, as theretofore therein provided. It will be noted that now Sec. 2505 Rev. Stat. makes extensions within municipalities subject to Sec. 3439 Rev. Stat., *et seq.*, and Sec. 3439 Rev. Stat. is subject to Sec. 2505 Rev. Stat. *et seq., whenver the same shall be applicable.*

It is very evident that Secs. 2501 to 2505 Rev. Stat., inclusive, standing alone, relate to street railway lines located and extended wholly within municipalities, while Sec. 3437 Rev. Stat. *et seq.,* relate to all lines and extensions wherever located. In case of conflict as to city lines or extensions, the more general provisions of Sec. 3437 Rev. Stat. *et seq.* must yield to the more specific provisions of Secs. 2501 Rev. Stat. *et seq.* Section 2505 Rev. Stat. relates expressly and exclusively to extensions within a city of original city lines. It is evident as this section was first enacted and as the same was first carried into the Revised Statutes of 1880, no notice was required to be given of an application for an extension. The act being made expressly subject to Secs. 4 and 5 of the act of May 27, 1866, it will not be presumed that it was subject to other sections of the same act not specified. Nor will the fact that it was placed by the codifiers after Secs. 2501 to 2504 Rev. Stat., have the effect to alter its construction or meaning. Allen v. Russell, 39 Ohio St. 336, 337; State v. Darke Co. (Aud.) 43 Ohio St. 311, 315 [1 N. E. Rep. 209]; State v. Stockley, 45 Ohio St. 304, 308, 309 [13 N. E. Rep. 279].

When Sec. 2505 Rev. Stat. was last amended, if it was desired to make the same subject to Sec. 2502 Rev. Stat. as to notice, the arrangement of the sections would certainly have suggested a direct reference to Sec. 2502 Rev. Stat. in terms. Instead of this, the operation of the section is expressly made subject as stated to Sec. 3439 Rev. Stat. *et seq.,* and Sec. 3439 Rev. Stat. requires that the provisions of Sec. 2502, as well as Sec. 2505 Rev. Stat., shall be observed in extensions or new routes granted.

Since Sec. 3439 Rev. Stat refers to new routes, and Secs. 2501 to 2504 Rev. Stat. relate to new routes, and the same section (Sec. 3439 Rev. Stat.) refers to extensions, and Sec. 2505 Rev. Stat. relates to extensions, it would seem that the fair rendering of Sec. 3439 Rev. Stat.;

upon the point now under consideration, is the same as though the concluding clause were, " and the provisions of Secs. 2501 to 2504 Rev. Stat., inclusive, in the granting of a new route, and Sec. 2505 in granting an extension, so far as said sections are applicable shall be observed in all respects." The history of the legislation, as well as the language of Sec. 3438 Rev. Stat., shows that an extension from without into or through a municipality is, as to the part of the line within the municipality, a new route. At the very most it cannot be contended that Sec. 3439 Rv. Stat. requires the observance of Sec. 2502 Rev. Stat. *et seq.* only *when the same are applicable.* They are not applicable in all cases covered by Sec. 3439 Rev. Stat., to wit, a line constructed wholly without a municipality or an extension of such line not into or through a municipality. In such cases municipal officers would have no duty in the premises and the sections only enjoin duties upon such officers. In still other cases of extensions the provisions of Sec. 2502 Rev. Stat. should be held to apply only if the case is within the reason of each section. Section 2505 Rev. Stat. relates only to extensions and these may be granted. An extension can only be predicated of an existing line or a present right to construct a line—a person to apply for an extension must be the owner of a line or have a present right to construct a line. The statute does not make the right to grant an extension depend upon the fact that there are two or more owners of existing lines or of two or more present rights to construct lines in the municipality.

The notice required by Sec. 2502 Rev. Stat. is a means to secure reduced fares by competitive bidding. To bidding there must be at least two qualified bidders. In the case at bar there is neither pleading or proof that when the ordinance of October 21, 1902, was passed, there was any person, persons or corporation other than defendant that could make application for the Columbus avenue extension or could receive a grant of it *as an extension.* Again, if there were two or more such corporations or persons, their lines existing or proposed would not be identical.

By Sec. 2505 Rev. Stat. a trip for a single fare over the original line and over the extension is contemplated. If notice were given and bids received each company would bid for a trip over its own line, plus the extension proposed. Since each original line would be different, the bidders would submit their proposal not with reference to the same but a different service. In such case it would be impossible to determine whose bid was " the lowest." But Sec. 2505 Rev. Stat. does not omit reference to fare, nor omit a means by which the charge is to be fixed. It has an express provision upon the subject.

"The charge for carrying passengers on any street railway so extended * * * shall not be increased by reason of such extension."

In the absence of all regulation such company could exact a reasonable fare. The function of legislation is to limit. When regulation is attempted, and a specified charge prohibited, or a limit fixed, any charge within the limit or not prohibited may be exacted. Hence, the provision quoted, that the rate of fare fixed for the original line, shall not be increased upon the line as extended, is by construction tantamount to a provision that the former charge need not be reduced by reason of the extension.

Terms *implied* from the express terms of a statute are as much a part of the statute as the express terms themselves. By the terms express and implied of Sec. 2505 Rev. Stat., the rate of fare is *fixed* for the extended line. And for this as well as the other reasons heretofore stated, it results that to give notice of the application for an extension in the case at bar, would be a vain thing. The observance of Sec. 2502 Rev. Stat. as to notice is then not required by Sec. 3439 Rev. Stat. in the case at bar, because it is not in any degree applicable. If the extension were from an original line wholly without the municipality, into or through the municipality, such extension would be as to such municipality, an original line or new route, and in such case Sec. 2502 Rev. Stat. and the other sections would apply. But that is not this case. 91 O. L. 285, Sec. 6.

IV. As to the right to construct branches: Defendant's charter constitutes it an interurban electric railway.

"An interurban electric railroad is classed as a street railroad by the statutes of this state." Cincinnati, L. & A. Elec. St. Ry. Co. v. Lohe, 68 Ohio St. 101.

"Suburban and interurban railroads, * * * having been classified by the legislature of the state of Ohio with street railroads, are governed by the laws relating to street railroads." Cincinnati & H. Elec. St. Ry. Co. v. Railway Co. 12 Circ. Dec. 113 (21 R. 391).

A street railroad company may construct an extension of its lines even beyond the *termini* specified in its charter. Sims v. Railway Co. 37 Ohio St. 556. Hence defendant, after securing the right to do so, as required by law, from the proper local authorities, can construct extensions, and there may very well be, and most generally are, branches from its main line.

V. The danger of these proposed grade crossings as a ground of equitable relief.

This ground for an injunction as set out in plaintiff's pleadings in-

volved two questions;  one of fact as to the danger of the proposed
crossings, the other of law as to the effect of the dangerous nature of the
crossings, if they or either of them be in fact dangerous.

We find, as matter of fact, that there is nothing in the location of
these crossings, or either of them, or in the grades at which the tracks
of plaintiff are approached by the said street, or in the proposed con-
struction or manner of operation of defendant's street railroad, that will
render either of the proposed crossings in any degree more dangerous
than a grade crossing of a street railroad with a steam railroad at a con-
venient grade in a city must ordinarily and necessarily be.  On the other
hand, by reason of the proximity of plaintiff's depots and the usual stop-
ping place of its trains, the use of its railroad yards in the near vicinity,
the existence and operation of plaintiff's block system and the resulting
present control which plaintiff will and must have over the movement
of its trains at these points—all these render the proposed crossings much
less dangerous than such grade crossings ordinarily are.

If the fact were otherwise, the result in law in this state would not
be different.

" In the absence of statutes regulating the place and manner of
crossing and when the rights of the public or one or other of the inter-
secting (steam railroad) lines will be materially injured a court of equity
may enjoin a grade crossing."

This rule does not apply to street crossings with steam railroads,
and if it does not apply to streets in general, it does not apply to the use
in all ordinary ways of such street, and as we have seen, the use of the
streets for street railway purposes is an ordinary use.  In Railway Co.
v. Defiance, 52 Ohio St. 262 [40 N. E. Rep. 89], it was held that " the
comparative dangers in the use of grade and overhead crossings, and the
relative public benefits and private disadvantages that may result from
a contemplated improvement of the streets, are matters for the considera-
tion of the members of the council, who are the sole judges of the propri-
ety, as well as the necessity of the improvement;  and their decision,
when not transcending their powers, nor induced by fraud, is not sub-
ject to judicial revision;" and in the same case, on error to the Supreme
Court of this state, it was held by the United States Supreme Court in
Wabash Ry. Co. v. Defiance, 10 O. F. D. 480 [167 U. S. 88;  17 Sup.
Ct. Rep. 748;  42 L. Ed. 87]:

" It is within the discretion of the common council to determine
whether the public exigencies require that the grade of a street be so
changed as to cross a railroad at a level;"  and in the opinion by Mr.
Justice Brown on page 491 it is said:

" While the modern policy of railway engineering usually tends to the abolition of grade crossings, there is no hard and fast rule upon the subject, and it may well be that the exigencies of a certain street or locality may demand that travel shall descend to the level of the railway rather than ascend to a bridge built over the track. But however this may be, we are not at liberty to inquire whether the discretion vested in the common council in determining this question was wisely exercised; * * * or whether the crossing so improved was burdensome to the railroad company; or made unsafe to persons crossing the track. These were considerations which might properly be urged upon the common council as arguments against the proposed change; but it is beyond the province of the courts either to praise the wisdom or criticise the unwisdom of such action."

The case before that court was one in which the council of the city of Defiance had resolved to abolish an overhead crossing and establish a grade crossing in its stead. Yet the court said " the question before us is simply whether the council had the power to make the change, and of this we have no doubt." The cases cited announce and determine the questions arising upon this last branch of the case at bar as far as the law of Ohio is concerned; and whether the railroad company complainant be one lying wholly within this state or extends into other states and whether engaged in state or in interstate commerce.

The suggestion that Sandusky avenue can be used as a highway upon which a safer and better crossing can be constructed is met by the fact that defendant has no present right to use that street, and since to acquire it defendant must first obtain the necessary consents of a majority in feet front of the owners of abutting lots (consents which such lotowners may grant or refuse as they freely choose), and after these consents are obtained the right is further dependent upon the voluntary action of the council, it cannot be assumed that defendant will ever acquire any right to use that street.

We are of opinion that the equities of the case are with defendant. The temporary injunction is dissolved and plaintiff's petition is dismissed. Costs to plaintiff. Judgment for costs and execution awarded and the cause is remanded to the court of common pleas for execution.

**Day and Norris, JJ.,** concur.